**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT WILSON, et al.,** | : | **Case No. 1:25-cv-326** |
| | : | |
| **Plaintiffs,** | : | **Judge Jeffery P. Hopkins** |
| | : | |
| **-vs-** | : | |
| | : | **DEFENDANTS' RULE 12(c)** |
| | : | **MOTION FOR JUDGMENT** |
| | : | **ON THE PLEADINGS** |
| **CITY OF CINCINNATI, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, through the accompanying memorandum of law, Defendants City of Cincinnati and Teresa Theetge (collectively "the City") hereby move to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(c). All claims should be dismissed as a matter of law.

Respectfully submitted,

**EMILY SMART WOERNER (0089349)**
**CITY SOLICITOR**

*s/ William C. Hicks*
William C. Hicks (0068565)
Chief Counsel-Labor & Employment
Matthew T. Crawford (0089205)
Senior Assistant City Solicitor
City Hall, Room 214
801 Plum Street
Cincinnati, Ohio 45202
Telephone: (513) 352-3329
Fax: (513) 352-1515
Email: william.hicks@cincinnati-oh.gov
matthew.crawford@cincinnati-oh.gov
*Counsel for Defendant City of Cincinnati*

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

Plaintiffs Robert Wilson, Patrick Caton, Gerald Hodges, and Andrew Mitchell were all Lieutenants with the City of Cincinnati Police Department during the time relevant to this matter. Caton, Hodges, and Mitchell are still Lieutenants, while Wilson has been promoted to Captain. Their claims stem from their time as Lieutenants.

Plaintiffs generally allege that they were victims of disparate treatment discrimination in employment based on their race (Caucasian) and sex (male) in violation of state and federal law. They claim that Defendants intentionally discriminated against them regarding transfers and assignments as Lieutenants in favor of non-whites and/or females.

As required by law, the Plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). However, each charge of discrimination is identical to those filed by the other Plaintiffs except for the name of the charging party on the top of the charge form. The charges and the Complaint do not even contain any allegations of adverse or discriminatory actions taken against two of the Plaintiffs, Wilson and Caton. Further, the allegations contain cherry-picked statistics from an isolated moment in time, as well as only four numbered paragraphs without any specific factual allegations about who was denied assignments. These "statistics" have no bearing on individual discriminatory intent,

and the scant specific facts are devoid of much detail, including any mention of the Plaintiffs, Wilson and Caton or what assignments they are concerned with.

Plaintiffs' Complaint should be dismissed for several reasons. First, Plaintiffs failed to exhaust their administrative remedies in multiple ways. Many of the factual allegations are entirely absent from their EEOC charges and beyond the scope of the investigation of the charges. Also, many of the specific allegations that were not included with the charges filed with the EEOC, but only included in the Complaint, are beyond the 300-day filing limit.  Finally, Plaintiffs cannot bring their state law claim against Chief Theetge individually and she is entitled to qualified and state immunity. As such, Plaintiffs' claims are without merit and should be dismissed.

## II.     STATEMENT OF RELEVANT FACTS

Plaintiffs Wilson, Caton, and Hodges filed their EEOC charges on September 24, 2023, and Plaintiff Mitchell filed his charge on November 2, 2023. (Compl. Doc. 1, ¶¶ 8-9; attached as Exhibit A). These charges are identical. The bulk of the charges contain cherry-picked statistics and conclusory allegations that assignments to command/preferred assignments and district/section relief assignments (patrol) are based solely on race and/or gender. Following the introductory paragraphs are four numbered paragraphs. The paragraphs are the only place where any of the Plaintiffs are named and any specific assignments at issue are identified. Mitchell and Hodges are named in the first two numbered paragraphs which identify the assignments they were allegedly removed from (Mitchell) or denied based on their race and/or gender (Hodges). The remaining two numbered paragraphs contain no specific allegations

4930-3408-4694, v. 15

about any of the Plaintiffs other white male lieutenants, including Wilson or Caton, who sought assignments and were denied. The complete particulars of the charges are as follows:

*I am a lieutenant and employed within and by the City of Cincinnati and the Cincinnati Police Department. A lieutenant is generally a shift supervisor within a district (within the patrol bureau) or are assigned to a specialty command/preferred assignment, which contain perks and monetary benefits, to include take home cars, overtime opportunities and call out/on call pay, and regarded generally within the Cincinnati Police Department as career-enhancing, including for promotion purposes. Lieutenants assigned as shift supervisors to district/section reliefs (i.e., a patrol shift supervisor) receive less access to overtime, less recall time, less experience, less opportunity for career growth, less schedule flexibility/restrictions on off-time, and less benefits (i.e., a take-home vehicle), all constituting tangible employment benefits, than those lieutenants in preferred assignments.*

*All assignment decisions, including those to preferred assignments and/or shift relief are made by the Cincinnati Chief of Police. Starting on or about January 9, 2023, when Theresa Theetge was made the Cincinnati Police Chief, and continuing to the present, there has been significant discrimination directed against white males regarding these assignments. During the entire relevant period, I have been assigned as a district/section reliefs (i.e., a patrol shift supervisor), and denied any opportunity for a preferred assignment solely due to my race and sex, as my experience, qualifications, and training exceed those who have been given these assignments and the only distinguishing characteristics is race and sex. There are 40 Cincinnati Police lieutenants. (Thirty-nine have active assignments. One is on military leave.) Seventeen lieutenants are assigned to a district/section relief (i.e., a patrol bureau shift supervisor) within the Cincinnati Police Dept (CPD). There are currently 14 males, white, lieutenants assigned to district/section reliefs. The other three lieutenants are black (two male and one female), and two of those three lieutenants requested to be assigned to a district/section relief. Every non-white and/or female lieutenant in the CPD, except for one, has been given a preferred assignment based on their race and/or gender without regard to their years of experience, qualifications, work history, and/or staffing requests by District Commanders. In other words, minority and/or female lieutenants are given preferred assignments based strictly on their race and/or gender and nothing more.*

- *Male, white lieutenants are assigned to approximately 65% of the total lieutenant complement, the remaining 35% are females and other races.*
- *Male, white lieutenants are assigned to approximately 82% of total district/section relief commanders, the remaining 18% includes one female black lieutenant and two male black lieutenants. (As described in the first*

4

*paragraph, two of the three black lieutenants requested their transfer from a preferred assignment to patrol.)*

- *Male, white lieutenants are provided approximately 44% of preferred assignments, but only because there are not more minority or women lieutenants to assign to those positions.*
- *Of the total female lieutenant complement (9 lieutenants), 89% are in preferred assignments.*
- *Of the total minority complement (14), 79% are in preferred assignments.*
- *Of the total male, white lieutenant complement, excluding the lieutenant on military leave as he is not currently assigned to any position, approximately 44% are in preferred assignments.*

*The following are specific examples:*

1. *November of 2022 to January 2023 - Lt. Andrew Mitchell was disciplined and transferred from a preferred assignment (ITMS) to a district relief position. Lt. Victoria Weyda was disciplined with sustained findings from an internal investigation and transferred from a preferred assignment (Inspections) to Lt. Mitchell's prior preferred assignment (ITMS). Lt. Shannon Heine, the last female, white lieutenant in a district/section relief position was transferred into Lt. Weyda's prior preferred assignment (Inspections).*

2. *January of 2023 – District 5 Commander, Capt. Amanda Caton, specifically requested that Lieutenant Jerry Hodges be assigned to Dist. 5 as the Investigative Lieutenant. Instead, Chief Theetge chose Lt. Denica Gilmer (female, black) for that assignment.*

3. *May of 2023 – Criminal Investigative Section Commander, Captain Steven Saunders, posted a vacancy for the Major Offenders Unit Commander, requesting lieutenants submit an interdepartmental correspondence letter expressing interest in the position. Several white, male lieutenants applied for the position, but Lt. Denica Gilmer (female, black) was chosen for the assignment, her second preferred assignment in nearly 6 months.*

4. *June of 2023 – Lieutenant Jarrod Cotton (male, black) was given a preferred assignment on the day he was promoted to Lieutenant (6.11.23), despite two male, white lieutenants scoring above him (#1 and #2, Lt. Cotton was #3) on the promotional examination for the rank of lieutenant.*

*The City of Cincinnati and specifically Chief Theetge, has, and continues to utilize, a race-based quota system to ensure that it promotes women/minorities to Lieutenant in the first place, and then makes assignment decisions solely on the basis of race and sex, depriving white male lieutenants of tangible employment benefits.*

4930-3408-4694, v. 15

The EEOC issued a Dismissal and Notice of Right to Sue to each Plaintiff on February 20, 2025, at their request. After receiving the notices, Plaintiffs filed suit in this Court. Compl. Doc. 1. Like the EEOC charges the Complaint contains the same irrelevant statistical "evidence" followed by four subparagraphs (a through d) of specific allegations of discriminatory assignments, which are virtually identical to the EEOC charges. Compl. Doc. 1, ¶ 28. However, the Complaint then adds five additional subparagraphs (¶ 28e through i) with specific allegations about alleged discriminatory assignments that were allegedly given to minorities or females over "more or better qualified" white male Lieutenants. Notably, the Complaint fails to allege that any of the Plaintiffs even applied for or requested a transfer to any of these assignments. These assignments occurred on or about May 26, 2024, July 21, 2024, September 15, 2024, September 29, 2024, and January 5, 2025, long after the filing of the underlying EEOC charges on September 24th and November 2nd of 2023, and 300 or more days ago.

## III.    STANDARD OF REVIEW

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). Rule 12(b)(6) provides for dismissal where a complaint fails "to state a claim upon which relief can be granted." In reviewing a Rule 12(b)(6) motion, the facts alleged by a plaintiff must be accepted as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). *See also Erickson v.*

6

*Pardus*, 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive such a challenge, a complaint "must contain sufficient factual matter accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Though well-pleaded factual allegations must be accepted by the Court as true, there is no requirement that courts "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Complaints that offer only "naked assertion[s]" devoid of "further factual enhancement" are properly dismissed. *Twombly*, 550 U.S. at 557.

## IV.    ARGUMENT

Plaintiffs' Complaint is deficient in multiple ways, and their claims should be dismissed. First, Plaintiffs failed to exhaust their administrative remedies for the bulk of their allegations of discrimination. Many of the factual allegations in the Complaint are entirely absent from their EEOC charges and are beyond the scope of the investigation reasonably expected to grow out of those charges. In fact, Wilson and Caton failed to include any personal allegations related to assignments. (Counts I, II, & III). Also, the additional specific examples of alleged discriminatory assignments from 2024 and 2025 that are included in the Complaint were never filed with the EEOC and are now untimely. (Counts I, II, & III). Additionally, Plaintiffs

have pled insufficient facts to establish many of their claims. Also, Wilson and Caton lack standing because they have not pled any facts demonstrating a personal stake in the outcome or any personal injury. (Counts I, II, III & IV). Further, Chief Theetge cannot be sued individually under Ohio law and is entitled to both qualified and state immunity. Finally, Plaintiffs' *Monell* claim against the City fails to allege a sufficient municipal policy that caused injury. (Count IV).

### A. The Plaintiffs Failed to Exhaust Their Administrative Remedies Prior to Filing the Complaint.

As a prerequisite to bringing suit under Title VII and O.R.C. 4112, a claimant must exhaust his administrative remedies. *Weigel v. Baptist Hosp. of E. Tenn.* (6th Cir. 2002), 302 F.3d 367, 379. Under 29 U.S.C. § 626(d)(2), in a deferral state such as Ohio, a plaintiff must file a charge with the EEOC within 300 days of a discriminatory act, or any claims arising from that act will be dismissed as untimely. "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Younis v. Pinnacle Airlines, Inc.*, 61 F.3d 359, 361 (6th Cir. 2010) (quoting 29 C.F.R. § 1601.12(b)). This serves to put employers on notice and gives the EEOC the opportunity to investigate or settle the dispute. *Id.* Additionally, the general rule in this circuit is that the judicial complaint must, at a minimum, be limited to the scope of the EEOC investigation or reasonably related to or grow out of the factual allegations in the charge of discrimination. *Golden v. Mirabile Inv. Corp.* 724 Fed. Appx. 441, 445 (6th Cir. 2018); *Younis*, 610 F.3d at 362; *Weigel,* at 380. O.R.C. § 4112.052(B)(4)(a) similarly requires that civil actions filed in court be related to the charge filed with the OCRC.

8

Here, the facts in the charges fail to mention the vast majority of the specific examples of the allegedly discriminatory assignments that are included in Plaintiffs' Complaint. Compl. Doc. 1, ¶ 28(e-i). While the complaint and charges make very general allegations about the discriminatory nature of the granting or denial of assignments, there is almost no mention of who had applied for the assignments. Only two of the Plaintiffs were even identified, along with the assignment involved, in the charges filed with the EEOC.

More glaringly, the specific examples of assignments given to female or minority Lieutenants on May 26, 2024, July 21, 2024, September 15, 2024, September 29, 2024, and January 5, 2025, which are included in the Complaint, are completely absent from the EEOC charges. Further, these allegations occurred long after the filing of the underlying EEOC charges on September 24th and November 2nd of 2023, and the final one occurred just over a month before the EEOC charges were dismissed. Thus, Plaintiffs failed to allege sufficient facts that would have put the EEOC on notice that these actions were part of the alleged discrimination such that it would have been expected to follow from an investigation of the few specific allegations that were included in the charges. Finally, the latest additional incident that was included in the Complaint is from January 5, 2025, 300 or more days ago. Therefore, the additional claims are untimely under law and Plaintiffs have failed to exhaust their administrative remedies. None of the added allegations that appear first in the Complaint should be part of this litigation. Accordingly, the discrimination claims by Wilson and Caton for discrimination in Counts I through III should be

dismissed for failure to exhaust administrative remedies and this case should be limited to the two assignments identified by Mitchell and Hodges in their charges. And for the reasons described below, the Mitchell and Hodges allegations should also be dismissed.

### B. Plaintiffs Wilson and Caton Lack Standing to Bring Their Claims.

Standing is a threshold requirement that determines whether a court has jurisdiction to hear a case. A third party who was not personally harmed generally cannot bring a claim under Article III of the U.S. Constitution. And Section 1983 does not create standing for a discrimination claim on behalf of someone else. Section 1983 claims are personal and can only be brought by the individual whose constitutional rights were directly violated. There are no facts in the Complaint that demonstrate Wilson or Caton were personally harmed as they failed to identify any assignments they were denied or even that they requested any.

To meet the standing requirement of Article III of the United States Constitution, a plaintiff must demonstrate "a personal stake in the outcome of the controversy." *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 72, (1978). To show a "personal stake" requires that a plaintiff "personally have suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, (1979). Additionally, that injury must be able to be traced to the challenged action and is likely to be redressed by a favorable decision. *Simon v. Eastern Kentucky Welfare Rights Org.*,

4930-3408-4694, v. 15

426 U.S. 26, 38, 41, (1976); *Valley Forge College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, (1982).

The Sixth Circuit has consistently held that Section 1983 claims are "entirely personal to the direct victim of the alleged constitutional tort" and do not allow for claims based on emotional distress, loss of a loved one, or other collateral injuries suffered by third parties. *Claybrook v. Birchwell,* 199 F.3d 350, 357 (6th Cir. 2000); *Barber v. Overton,* 496 F.3d 449, 457 (6th Cir. 2007).

Wilson and Caton are incapable of establishing the required actual or threatened injury to establish the necessary personal stake in the denial of any assignments. The Complaint repeatedly alleges in a conclusory fashion that the assignments were granted to less qualified females and minorities at the expense of more qualified white males but they never allege that they even applied for any assignments in either their EEOC charges or in the Complaint. As such, Wilson and Caton's claims must be dismissed. Mitchell and Hodges claims must be limited to the two they identified in their charges and Complaint because they never identified any personal interest in any assignment other than those.

## C. Plaintiffs Have Pled Insufficient Facts to Establish Their Title VII and Equal Protection Claims.

Even if this Court were to deny Defendants' procedural and immunity defenses, Plaintiffs' threadbare, conclusory, and vague recitation of facts and elements for all of their claims necessitate dismissal. Complaints that offer only "naked assertion[s]" devoid of "further factual enhancement" are properly dismissed. *Twombly,* 550 U.S. at 557. The complaint in this matter epitomizes this rule.

11

Throughout their complaint, Plaintiffs, with little to no factual support, make repeated conclusory allegations couched as factual allegations and/or legal conclusions. They repeatedly make broad unsupported claims of discriminatory practices intended to favor minorities and women but fail to support these allegations with sufficient factual allegations that plausibly demonstrate a claim to relief.

While assignments are not promotions, it is appropriate to analyze them under the same framework as a failure to promote claim, as they involve applications and failure to be selected for an assignment. Plaintiffs fail to allege sufficient facts to bring a failure to promote claim. Because both Title VII and § 1983 prohibit discriminatory employment practices by public employers and largely parallel remedies, Title VII disparate treatment cases provide assistance in analyzing both claims. *Boutros v. Canton Regional Transit Authority*, 997 F.2d 198, 203 (6th Cir. 1993); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir. 1988). Plaintiffs must show that their employer made an adverse employment decision "with a discriminatory intent and purpose." *Boger v. Wayne County*, 950 F.2d 316, 324-25 (6th Cir. 1991). Plaintiffs may not simply introduce evidence of discriminatory intent and suggest that such intent played a role in the adverse employment decisions. Rather, a plaintiff must demonstrate that the employment decision would not have been made but for race or was motivated by gender. *Id.*; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1980).

To establish a *prima facie* Title VII or equal protection claim for failure to promote, the plaintiff must show 1) he is a member of the protected class, 2) he

applied for and was qualified for a promotion, 3) he was considered for and was denied the promotion, and 4) other employees with similar qualifications who were not members of the protected class received promotions. *Jones v. Johnson*, 801 F. App'x 338, 346 (6th Cir. 2020) (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812-13 (6th Cir. 2011)). Plaintiff must also demonstrate that the similarly situated employee outside the protected class were a similarly situated employee to whom they seek to compare themselves is similarly situated "in all relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

The relative qualifications of candidates establish triable issues of fact as to pretext only where the evidence shows that plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former. *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 668 (6th Cir. 2013). Plaintiffs must objectively demonstrate superior qualifications and if "two reasonable decisionmakers could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the others." *Taylor v. Ingham Cnty. Cir. Ct.*, 2024 U.S. App. LEXIS 15912, *16 (6th Cir. June 27, 2024). (cleaned up). (citing *Aday v. Westfield Ins. Co.*, 2022 U.S. App. LEXIS 2319, at *5 (6th Cir. Jan. 24, 2022).

Evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory

13

rationale was pretextual. *Id*. In this Circuit, there is an "exceptionally high standard for satisfying the burden of proving a plaintiff is the plainly superior candidate," because courts avoid "acting as a 'super personnel department,' overseeing and second-guessing employers' business decisions." *Id*.

Hodges alleges in his complaint that despite being requested by the District 5 Commander for the Investigative Lieutenant position, Chief Theetge chose a black female, Lieutenant Denica Gilmer. Compl. Doc. 1, ¶ 28b. Hodges fails to allege any facts about the relative qualifications of Gilmer, let alone anything that would raise a question of fact as to whether he was plainly superior. The only allegations about qualifications in the Complaint are that other white Lieutenants "were more or better qualified for the assignment[,]" which relate to other assignments that Hodges does not allege he applied for. Compl. Doc. 1, ¶¶ 28c-i. Beyond that the Complaint only alleges generally that "Plaintiffs were qualified for those positions." Compl. Doc. 1,¶¶ 31, 56. While the *prima facie* case elements are an evidentiary standard and not a pleading standard, they are still used on Rule 12 motions to help courts use their judicial experience and common sense to determine whether there is sufficient factual content to enable the court to determine, based on its judicial experience and common sense whether there is a reasonable inference of discrimination. *Vigil v. STS Sys. Integration, LLC*, 2019 U.S. Dist. LEXIS 164453 (S.D. Ohio, Sept. 25, 2019); *Mitchell v. Ohio State Univ.*, 2020 U.S. Dist. LEXIS 160824 (S.D. Ohio, Sept. 3, 2020); *Prado v. Mazeika*, 2018 U.S. Dist. LEXIS 162098 (S.D. Ohio, Sept. 21, 2018).

14

Here there is a glaring lack of factual content to support Hodges allegations. He applied for the District 5 Investigator position and a black female, Lieutenant Gilmer, received it. His conclusory statement in the Complaint that "[u]pon information and belief, the choice to assign Lt. Gilmer was not based on any legitimate, non-discriminatory reason but instead was based on race and/or sex[,]" is not sufficient factual content by a large margin.

Similarly, Mitchell's allegations about his transfer from an assignment covering IT responsibilities due to discipline are woefully short of the mark as well. Compl. Doc. 1, ¶ 28a. Mitchell then alleges that his position was filled by Lieutenant Victoria Weyda, a white female who had also received discipline. Doc. 1, ¶ 28a. He makes no further facts about the nature of their offenses or the degree of discipline each received to allow a comparison of their treatment. There is nothing more presented that allows an inference that the decisions were based on gender. The allegations don't even revolve around the denial of a position, so there is no implication that the two were even competing for the position such that their qualifications were being compared, but rather he was removed and then the assignment was open and needed to be filled. These facts are clearly insufficient to raise any question that the decisions were motivated by discriminatory intent and Mitchell's claims should be dismissed.

The sufficiency of Wilson and Caton's factual content cannot actually be evaluated because there is none. Consistent with the identical EEOC charges the Complaint fails to mention them other than in the caption. No specific facts about

15

assignments they sought, qualifications of them and the successful candidates, or any other relevant persuasive information exists in the Complaint. They cannot establish one of the most important of these steps because they never allege they applied for or even identify any assignment and, as a result, there are no allegations they were ever considered for or were denied an assignment. The repeated naked assertions about discriminatory practices and general conclusory allegations are insufficient to survive review. Therefore, Wilson and Caton's claims must be dismissed.

### D. Police Chief Terry Theetge is Entitled to Qualified and Statutory Immunity.

In addition to claims against the City and claims against Police Chief Theetge in her official capacities, Plaintiffs bring several claims against Theetge in her individual capacity. Because Theetge is entitled to qualified immunity and immunity under Ohio Rev. Code 2744, these claims should be dismissed.

Qualified immunity shields government officials from civil liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity provides "ample protection to all but the plainly incompetent and those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); see also *Miller v. Administrative Office of the Courts*, 448 F.3d 887, 896-97 (6th Cir. 2006).

As qualified immunity is immunity from suit, not just immunity from liability, an official's entitlement to qualified immunity should be determined at the earliest

16

stage of the proceedings. It is the plaintiff's burden to establish that a defendant is not entitled to qualified immunity. *Miller*, 448 F.3d at 894.

Qualified immunity has two components: (1) whether a constitutional violation occurred, and (2) whether the law was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). The touchstone of the clearly established prong is whether the official had "fair warning" of the illegality of his actions. *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013). When considering whether a right is clearly established, "a district court must look to then-existing binding precedent from the Supreme Court, the Sixth Circuit or itself." *Adams v. Ohio University*, 300 F.Supp.3d 983, 1001 (S.D. Ohio 2018). This inquiry "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741; *see also Rivas-Villegas v. Cortesluna*, No. 20-1539, 2021 WL 4822662, at *2-3 (U.S. Oct 18, 2021); *City of Tahlequah v. Bond*, No. 20-1668, 2021 WL 4822664, at *2 (U.S. Oct. 18, 2021). Therefore, employees "are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)).

Plaintiffs cannot cite cases on point that clearly establish a constitutional right in a context similar to the facts of this case. No cases have been found by Defendants that would give Theetge "fair warning" that her actions in awarding an assignment a black female over a white male, without any factual information about the process and the qualifications of the candidate would clearly be unconstitutional. There are

17

also no cases on point that would make it clear that removing a white male with a discipline in his record from an IT assignment and then filling that position with a white female was unconstitutional. No facts pled in the Complaint with any specificity demonstrate a clearly established right existed at the time of those actions and nearly all the allegations are supported by mere legal conclusion couched as factual allegations.

Additionally, Ohio Rev. Code § 2744.03 generally describes the immunity available to political subdivisions and their employees. Exceptions to immunity for government employees who are being sued in their individual capacity are set forth in Ohio Rev. Code §2744.03(A)(6). Pursuant to this section, an employee is immune from liability unless (A) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities, (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner, or (c) liability is expressly imposed upon the employee by another section of the Ohio Revised Code. None of these exceptions apply. *See also, Copeland v. City of Cincinnati,* 159 Ohio App. 3d 833, 839 (1st Dist. 2005). Plaintiffs have not alleged that Theetge's actions were outside the scope of her official responsibilities nor that they were malicious, in bad faith, or wanton and reckless. While Plaintiffs have requested punitive damages because they allege the assignments were "motivated by evil motive or intent[,]" these are nothing but conclusory allegations not facts. Accordingly, Theetge is immune from liability under Ohio law.

4930-3408-4694, v. 15

Because Plaintiffs cannot show that Theetge violated clearly established statutory or constitutional rights of which a reasonable person would have known, she is entitled to qualified immunity and immunity pursuant to Ohio Rev. Code §2744.03.

**E. Plaintiffs' Claims for Aiding, Abetting, Inciting, Compelling, or Coercing Discrimination under R.C. 4412.02(J) Must Be Dismissed as Theetge Cannot Aid and Abet Herself.**

R.C. 4112 is essentially Ohio's version of Title VII. It has long been analyzed primarily under the same *McDonnell Douglas* burden shifting framework as Title VII. Under Title VII an individual cannot be held liable. For years after the Ohio Supreme Court's opinion in *Genaro v. Central Transport*, 84 Ohio St.3d 293 (1999), R.C. 4112 differed markedly from Title VII, particularly in one significant respect and allowed individual supervisors to be held jointly and/or severally liable with the employer for discriminatory conduct of the supervisor/manager.

On April 15, 2001, R.C. 4112 was amended to eliminate supervisory liability and made it consistent with Title VII and other federal employment statutes by only allowing liability for an "employer," which does not include individual employees. However, a single subsection of the statute, R.C. 4112.02(J), imposes liability on a "person" as opposed to an "employer," which allows individual liability for supervisors when they are involved in aiding and abetting discrimination. Plaintiffs, in desperate attempt to gain leverage through potential individual liability for Chief Theetge, have invoked this section. This attempt is misplaced, ineffective, and inapplicable here.

19

Quite simply, Chief Theetge cannot aid and abet herself to state a claim under Section 4112.02(J). Plaintiffs must allege Chief Theetge aided or abetted the City of Cincinnati's allegedly discriminatory actions. *Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059 (S.D. Ohio 2022). Plaintiffs have not met that burden. This is not a case in which two different employees were alleged to have aided and abetted each other. *Nash v. City of Cincinnati*, Case No. 1:24-cv-587, 2025 U.S. Dist. LEXIS 160755 (S.D. Ohio, Aug. 19, 2025). Moreover, even if Plaintiffs had made a plausible allegation of discrimination their allegations of aiding and abetting are not plausible. Ohio courts generally define "aid" as "[t]o assist" and "abet" as "[t]o incite or encourage." *Luke v. City of Cleveland*, No. 1:02CV1225, 2005 U.S. Dist. LEXIS 49630 (N.D. Ohio Aug. 22, 2005) (citation omitted). Plaintiffs, however, appear to argue Chief Theetge herself committed such conduct. But she cannot aid and abet herself; to state a claim, Plaintiffs must articulate her involvement in another's discriminatory conduct. "[M]ere association with the principal is not enough." *Horstman v. Farris*, 132 Ohio App. 3d 514, 527, 725 N.E.2d 698 (1999). Therefore, this claim should be dismissed.

### F. Plaintiff's *Monell* claims against the City should be dismissed.

Plaintiffs also allege Section 1983 claims of discrimination in violation of the Equal Protection Clause against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). These claims should be dismissed.

A municipal government is not automatically liable for "injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Instead, a municipality may be liable only if it adopted or ratified a policy or custom that caused the harm allegedly

inflicted by its officers or employees. *See id.* "The pleadings must set forth the specific policy or custom allegedly adopted by the government." *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 498 (W.D. Ky. 2021). *Monell* plaintiffs must provide "additional factual support" for their conclusion that the City acted pursuant to an unconstitutional policy. *Hutchison v. Metro Gov't*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010).

The required specificity cannot be found in the Complaint. Plaintiff alleges only that the City and Chief Theetge had some amorphous policy to systemically make assignment decisions that were preferable to women and minorities. Compl. Doc. 1, ¶ 56. Plaintiffs then cite the various theories of *Monell* liability. Compl., Doc. 1, ¶ 58. But that paragraph merely parrots the various avenues articulated by the Supreme Court in *Monell*. Courts have held that plaintiffs must make clear which theory or theories they are relying on to establish municipal liability-if the plaintiff fails to identify a specific theory, courts will not try to surmise which theory of municipal liability has the strongest support in the complaint. Because Plaintiffs fails to identify a specific City policy that was the "moving force" behind the alleged constitutional violations, dismissal is warranted. *Monell*, 436 U.S. at 694.

21

## V.      CONCLUSION

Plaintiffs have failed to state claim upon which relief may be granted. The Court should dismiss the Complaint in its entirety.

Respectfully submitted,

**EMILY SMART WOERNER (0089349)**
**CITY SOLICITOR**

*s/ William C. Hicks*
William C. Hicks (068565)
Chief Counsel-Labor & Employment
Matthew T. Crawford (0089205)
Senior Assistant City Solicitor
City Hall, Room 214
801 Plum Street
Cincinnati, Ohio 45202
Telephone: (513) 352-3329
Fax: (513) 352-1515
Email: william.hicks@cincinnati-oh.gov
matthew.crawford@cincinnati-oh.gov
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on October 31, 2025, a true and accurate copy of the foregoing Defendants' 12(c) Motion for Judgment on the Pleadings was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ William C. Hicks*
William C. Hicks (0068565)

4930-3408-4694, v. 15